UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————— )
                                                                 )
ANALYSIS GROUP, INC.,                         )
                                                                 )
                    Plaintiff,                              )
                                                                 )
        v.                                                     )            Action No.
                                                                 )
TWITTER, INC.,                                     )
                                                                 )
                    Defendants,                          )
                                                                 )
———————————————————————— )

## COMPLAINT

Plaintiff Analysis Group, Inc. ("AG") brings this Complaint against Defendant Twitter,

Inc. ("Twitter" or "Defendant") and states as follows:

## INTRODUCTION

1.        Beginning in July 2022, AG entered into a series of written contracts with Twitter,

which were signed not only by Twitter itself but also by Twitter's outside counsel, to support

Twitter's highly publicized litigation against Elon Musk and related entities in the Delaware

Chancery Court.  AG and the experts it supported performed thousands of hours of services with

respect to a wide range of expert opinions supporting Twitter's position in the litigation.  In

conjunction with the conclusion of the litigation in October 2022, Mr. Musk purchased a controlling

interest in Twitter at the original agreed-upon price. Prior to the transaction closing, Twitter paid

AG's invoices for work performed through September 30, 2022, but, with Mr. Musk now in control,

Twitter has refused to pay AG for the rest of the work performed.  Twitter owes AG $2,186,876.47,

exclusive of interest, costs and attorneys' fees.

## PARTIES

2.      Plaintiff Analysis Group, Inc. is a Massachusetts corporation with a principal place of business in Boston, Massachusetts.

3.      Defendant Twitter, Inc. is a Delaware corporation with a principal place of business in San Francisco, California.

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over Twitter pursuant to Mass. Gen. L. ch. 223A, § 3(a) because this action arises out of transactions purposefully entered into by Twitter in Massachusetts.  For example, Twitter, directly and through its duly authorized counsel, engaged in hundreds of email and telephone communications with AG within the Commonwealth of Massachusetts and Twitter negotiated the AG agreements with, and the agreements were ultimately signed by, a Managing Principal in AG's Boston office. Furthermore, by contracting with AG, a Massachusetts business, Twitter has subjected itself to the jurisdiction of this Court.

5.      Twitter is also registered to conduct business in the Commonwealth of Massachusetts and maintains at least one Massachusetts office, at 2 Center Plaza, Boston.  On information and belief, tens of thousands, if not more, Massachusetts residents maintain a Twitter account and/or obtain information via the Twitter social media platform.  By regularly conducting business in Massachusetts, Twitter has subjected itself to the jurisdiction of this Court.

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties.  The amount in controversy exceeds $75,000, as AG is owed well in excess of $2,000,000 for services rendered.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in Massachusetts.  Specifically, the project

leader was a Managing Principal in AG's Boston office, and approximately one-third of the hours billed by AG for its work for Twitter were performed by Massachusetts professionals from AG's Boston office.

## FACTS

8.    AG is a company of approximately 1,200 employees providing a broad range of economic, financial, and business strategy consulting services, including analytical services in support of expert opinions for use in litigation.

9.    AG employs a number of highly qualified professionals who serve as testifying expert witnesses.  AG also has a broad external network of highly qualified professionals from academic institutions, industry, and government whom it frequently works with in complex litigation.

10.    Many of the external experts in AG's network have full time jobs and work as testifying expert witnesses on occasion.  Because these experts do not typically have the resources or staff to perform all of the background analysis and research required to develop an opinion on a complex financial or economic matter, AG often provides consulting support to them in their roles as testifying expert witnesses.  AG's provision of the necessary resources and staff is often at rates significantly less expensive than the testifying expert's rate.

11.    On or about July 12, 2022, Twitter filed a complaint against Elon Musk and two related corporate entities (collectively, the "Musk Parties") in the Delaware Chancery Court (Case No. 2022-0613), alleging Mr. Musk breached his merger agreement to buy Twitter for $54.20 per share in cash, for a total of approximately $44 billion (the "Musk Litigation").

12.     Twitter retained several eminently qualified law firms, including Watchell, Lipton, Rosen & Katz, Wilson Sonsini Goodrich & Rosati, P.C., and Potter Anderson & Corroon LLP (collectively, "Counsel"), to represent it in the Musk Litigation.

13.     AG entered into multiple engagement letters with Twitter and its Counsel starting in July 2022 (collectively, the "AG Contract").  Each engagement letter provided that Twitter would pay AG for analytical services in support of expert opinions, as well as economic consulting assistance to Counsel, in furtherance of Twitter's legal position in the Musk Litigation.  These letters contained the same terms, and differed only in the name and billing rate of the expert that AG would assist.  A copy of each relevant engagement letter (redacted for confidential information) is attached to this Complaint as **Exhibit A**.

14.     Twitter signed each of the engagement letters, as did each of the three law firms.

15.     The AG Contract specified the parties' responsibilities and set forth the terms of the engagement.  Specifically, the AG Contract included the anticipated hourly rates for its own staff and the experts, as well as the procedure for paying invoices.  The AG Contract specified that invoices are "payable upon receipt" and that "any invoice that remains unpaid more than forty-five days after receipt will … accrue interest at the rate of one percent per month." The AG Contract also stated that "All of the parties agree … that the responsibility for paying [AG's] bills will rest with [Twitter]."

16.     The AG Contract also stated that "[t]he parties all acknowledge that [AG's] and Expert's fees are in no way contingent on the nature of our findings, presentation of these findings in testimony, or the outcome of any proceeding."

17.     The AG Contract further stated that "Twitter, Inc. will be responsible for all costs of collection (including attorneys' fees) as may be allowed by law."

18.     At the direction of Counsel, on an extremely expedited basis in the highest of stakes litigation, AG assembled multiple teams of professionals to support a number of testifying experts' opinions that advanced Twitter's interest in the Musk Litigation. AG performed all requested expert consulting services to Twitter and its Counsel pursuant to the terms and conditions of the AG Contract.

19.     AG submitted invoices in August, September, and October 2022, each covering work performed during the prior month.  Twitter paid these invoices, which covered work performed through September 30, 2022.

20.     On October 28, 2022, the Musk Parties completed their acquisition of Twitter at the full offer price of $54.20 per share. Shortly thereafter, the Musk Litigation ended.

21.     On November 4, 2022, AG submitted to Twitter, via Twitter's electronic billing platform, an invoice for work on the Musk Litigation for the period ending October 31, 2022 (the "October Invoice"), in the amount of $2,186,876.47.  A copy of the summary portion of the October Invoice (redacted to preserve confidential information) is attached hereto as **Exhibit B.**

22.     The October Invoice included charges for, among other things: (1) reimbursement of the invoices submitted to AG by experts it supported for professional services rendered in connection with the Musk Litigation for the period ending October 31, 2022 (per standard practice, AG had already paid the experts' invoices and included reimbursement of those amounts in its bills to Twitter); (2) review of documents, data and other information received from Counsel; (3) assistance with deposition preparation; (4) research and summary of relevant literature; (5) preparation of summary analyses of relevant material and data; (6) assistance with analyses for expert reports; (7) assistance to experts with their draft reports and information requests; and (8) discussions with Counsel and experts.

23.     Per its standard practice, prior to AG's receipt of payment from Twitter for such amounts, AG paid the experts it supported for professional services rendered in connection with the Musk Litigation that were included in the October Invoice in the amount of $210,503.00.

24.     In addition, as the Musk Litigation was winding down, Twitter requested that AG pay the $49,998 invoice of another consulting expert who had been directly engaged by Twitter. Twitter made this request to facilitate payment for this consultant's services without it having to set up an account in Twitter's electronic billing system.  As an accommodation to Twitter, and in reliance on written promises by Twitter's in-house counsel that Twitter would reimburse AG for payment of that consultant's invoice, AG paid that consultant directly and added that payment as an out-of-pocket expense to the October Invoice.

25.     The AG Contract required Twitter to pay the October Invoice upon receipt.

26.     To date, Twitter has failed to pay the October Invoice.

27.     Neither Twitter nor Counsel ever expressed any concern to AG regarding the October Invoice or any of the services provided by AG and the experts it supported in the Musk Litigation.

28.     AG's Deputy Legal Counsel contacted Twitter on November 22, 2022 to reiterate that payment was due upon invoice receipt and to request an update regarding the anticipated timing of the payment. No response was received.

29.     AG also attempted to contact Twitter multiple other times, but it received no response to any of these attempts.

30.     The invoice has remained unpaid for more than forty-five days after receipt and began accruing interest as of December 19, 2022.

31.     AG's Deputy Legal Counsel contacted Twitter again on January 6, 2023 to follow up on the prior email and inform Twitter that interest had started accruing on the outstanding invoice and that AG intended to take legal action if it did not receive full payment.  No response was received.

32.     Pursuant to the AG Contract, Twitter owes $2,186,876.47, exclusive of interest, costs and attorneys' fees.

33.     On information and belief, including but not limited to numerous publicized instances of Twitter refusing to pay other parties who had provided goods or services to Twitter prior to the Musk Parties' acquisition thereof, Twitter is engaged in a pattern of failing to honor its contractual obligations to pay its service providers.

## COUNT I
## BREACH OF CONTRACT

34.     AG repeats and realleges each of the foregoing allegations as if fully set forth herein.

35.     The engagement letters that Twitter entered into with AG are binding contracts.

36.     AG performed all requested expert consulting services to Twitter and its Counsel pursuant to the terms and conditions of the AG Contract.

37.     Twitter breached the contracts by refusing to pay the October Invoice promptly following receipt of same.

38.     AG has suffered damages as the result of Twitter's refusal to pay the October Invoice.

39.     By virtue of the foregoing, Twitter is liable to AG for its breach of contract in an amount to be determined at trial, together with interest, costs, and attorneys' fees.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

40.     AG repeats and realleges each of the foregoing allegations as if fully set forth herein.

41.     AG and Twitter are parties to multiple enforceable contracts.

42.     As a party to the contracts, Twitter has an implied obligation to act in good and in such a manner as to not deprive AG of the fruits and benefits of the contracts.

43.     Through the conduct described herein, Twitter has breached the implied covenant of good faith and fair dealing, which has caused AG to suffer damages in an amount to be determined at trial.

## COUNT III
## PROMISSORY ESTOPPEL

44.     AG repeats and realleges each of the foregoing allegations as if fully set forth herein.

45.     In October 2022, Twitter requested that AG pay another consulting expert who had been directly engaged by Twitter on its behalf and promised to pay AG back when AG invoiced Twitter for its own services for the month of October.

46.     Twitter made this promise for the purpose of inducing reliance by AG.

47.     AG relied on Twitter's promise and paid the other consultant's invoice, in the amount of $49,998, despite having no obligation to do so, and thereafter submitted a request for reimbursement via the October Invoice.

48.     As a result of AG's good faith reliance on Twitter's promise, AG has suffered damages in the amount of $49,998, exclusive of interest, costs and attorneys' fees.

49.     To the extent Twitter's refusal to reimburse AG for paying the other consultant's invoice is not a breach of Twitter's written engagement letters with AG, Twitter is liable for said payment under the theory of promissory estoppel.

**WHEREFORE**, AG prays that the Court:

A.      Enter judgment in its favor and award it damages in an amount to be determined at trial;

B.      Award it attorneys' fees, interest and costs, pursuant to the contracts or as otherwise provided by law; and

C.      Grant it such other and further relief as is just or appropriate.

## <u>JURY DEMAND</u>

AG demands a trial by jury on all counts so triable.

Respectfully submitted,

ANALYSIS GROUP, INC.,

By its attorneys,

/s/ David B. Mack
David B. Mack (BBO # 631108)
dmack@ocmlaw.net
Amanda F. Hobson (BBO # 707298)
ahobson@ocmlaw.net
O'Connor Carnathan and Mack LLC
67 South Bedford Street, Suite 400W
Burlington, MA 01803
Telephone:  781-359-9000

Dated:  February 9, 2023

# EXHIBIT A

**AG | ANALYSIS GROUP**

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA  02199

October 13, 2022

Ryan A. Mcleod, Esq.
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019-6150

Brad D. Sorrels, Esq.
Wilson Sonsini Goodrich & Rosati, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

~~Peter J. Walsh, Jr., Esq.~~ Christopher N. Kelly, Esq.
Potter Anderson & Corroon LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Re:    *Twitter Inc. v. Musk, et al.*
       Case No. 2022-0613 (Del. Chancery Ct.)

Dear Counsel:

We are very pleased that Wachtell, Lipton, Rosen & Katz, Wilson Sonsini Goodrich &
Rosati, P.C., and Potter Anderson & Corroon LLP (collectively, "Counsel") have decided
to engage Analysis Group, Inc. ("AG") and ███████████ ("Expert") on behalf of its
client, Twitter Inc. ("Client") in the above-referenced matter, and we look forward to
working with you. The purpose of this letter is to explain the responsibilities of AG,
Expert, Counsel, and Client and to confirm and set forth the terms of the engagement.

AG's work will consist of supporting Expert in tasks associated with providing
consulting assistance to Counsel and, if requested by Counsel, with his development of
an expert report in this matter on relevant issues for Client. Such work will be performed
at the direction of Expert and in consultation with Counsel. In addition, AG may provide
economic consulting assistance to Counsel at your direction.

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████

AG's and Expert's work will be performed on a time and materials basis. Expert's
billing rate is $███ per hour. The 2021 hourly rates for the AG staff who we anticipate
will work on this matter range from approximately $███ to $███ per hour. AG's rates are
typically revised firm-wide on a calendar-year basis. ███████████████

October 13, 2022
Page 2 of 4

AG will submit monthly invoices, payable upon receipt, which will show our professional services charges and will provide details concerning the nature of the work performed, by whom and the time incurred. The invoices will show, separately, our expense charges for such items as travel, communications, purchase of data, report production and other similar costs. Total expenses are typically about five to ten percent of the invoice amount. Any invoice that remains unpaid more than forty-five days after receipt will, at our option, accrue interest at the rate of one percent per month. AG and Expert, without liability, may withhold delivery of services and may suspend performance of their obligations pending payment of all charges that are due and unpaid more than sixty days after receipt. Counsel and Client acknowledge that all invoices must be current at the time of report issuance, deposition testimony and trial testimony. Twitter, Inc. will be responsible for all costs of collection (including attorneys' fees) as may be allowed by law.

Counsel shall use its best efforts to have AG's bills paid promptly by Client. All of the parties agree, however, that the responsibility for paying AG's bills will rest with Client.



This agreement is deemed to be made under and shall be interpreted in accordance with the laws of the Commonwealth of Massachusetts, excluding its conflict of laws provisions.

The parties all acknowledge that AG's and Expert's fees are in no way contingent on the nature of our findings, presentation of these findings in testimony, or the outcome of any proceeding.

October 13, 2022
Page 3 of 4

███████████████████████████████████████

This letter constitutes the entire agreement between the parties with respect to this matter, and it may only be modified by mutual written agreement.

Please acknowledge Counsel's and Client's agreement with this letter by signing and returning a copy of it to me. Do not hesitate to contact me at any point throughout the engagement with any questions you may have. We look forward to working with you.

Very truly yours,

████████████████

Managing Principal

Acc████████████

By: ████████████

For: ███████████

Date: 10/13/22

Accepted and agreed:

By: _Ryan Ma_____

For: Wachtell, Lipton, Rosen & Katz

Date: October 25, 2022

October 13, 2022
Page 4 of 4

Accepted and agreed:

By:

For:    Wilson Sonsini Goodrich & Rosati, P.C.

Date:    **10/25/22**

Accepted and agreed:

By:

For:    Potter Anderson & Corroon LLP

Date:    10/25/2022

Accepted and agreed:

By:    Karen Colangelo

For:    Twitter, Inc.

Date:    10/27/2022

**Analysis Group, Inc. is an Equal Opportunity Employer. It abides by the applicable requirements of 41 CFR 60-300.5(a) and 60-741.5(a) which prohibit discrimination against qualified individuals on the basis of protected status or disability, and require affirmative action to employ and advance in employment qualified protected veterans and individuals with disabilities.**



## ANALYSIS GROUP

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

July 28, 2022

Ryan A. Mcleod, Esq.
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019-6150

Brad D. Sorrels, Esq.
Wilson Sonsini Goodrich & Rosati, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

~~Peter J. Walsh, Jr., Esq.~~ Christopher N. Kelly, Esq.
Potter Anderson & Corroon LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Re:    *Twitter Inc. v. Musk, et al.*
       Case No. 2022-0613 (Del. Chancery Ct.)

Dear Counsel:

We are very pleased that Wachtell, Lipton, Rosen & Katz, Wilson Sonsini Goodrich &
Rosati, P.C., and Potter Anderson & Corroon LLP (collectively, "Counsel") have decided
to engage Analysis Group, Inc. ("AG") and ▇▇▇▇▇▇▇▇▇▇ ("Expert") on behalf of its
client, Twitter Inc. ("Client") in the above-referenced matter, and we look forward to
working with you.  The purpose of this letter is to explain the responsibilities of AG,
Expert, Counsel, and Client and to confirm and set forth the terms of the engagement.

AG's work will consist of supporting Expert in tasks associated with providing
consulting assistance to Counsel and, if requested by Counsel, with his development of
an expert report in this matter on relevant issues for Client.  Such work will be performed
at the direction of Expert and in consultation with Counsel.  In addition, AG may provide
economic consulting assistance to Counsel at your direction.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

AG's and Expert's work will be performed on a time and materials basis.  Expert's
billing rate is $▇▇▇ per hour.  The 2021 hourly rates for the AG staff who we anticipate
will work on this matter range from approximately $▇▇ to $▇▇ per hour.  AG's rates are
typically revised firm-wide on a calendar-year basis. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

July 28, 2022
Page 2 of 4



AG will submit monthly invoices, payable upon receipt, which will show our
professional services charges and will provide details concerning the nature of the work
performed, by whom and the time incurred. The invoices will show, separately, our
expense charges for such items as travel, communications, purchase of data, report
production and other similar costs. Total expenses are typically about five to ten percent
of the invoice amount. Any invoice that remains unpaid more than forty-five days after
receipt will, at our option, accrue interest at the rate of one percent per month. AG and
Expert, without liability, may withhold delivery of services and may suspend
performance of their obligations pending payment of all charges that are due and unpaid
more than sixty days after receipt. Counsel and Client acknowledge that all invoices
must be current at the time of report issuance, deposition testimony and trial testimony.
Twitter, Inc. will be responsible for all costs of collection (including attorneys' fees) as
may be allowed by law.

Counsel shall use its best efforts to have AG's bills paid promptly by Client. All of the
parties agree, however, that the responsibility for paying AG's bills will rest with Client.

This agreement is deemed to be made under and shall be interpreted in accordance with the
laws of the Commonwealth of Massachusetts, excluding its conflict of laws provisions.

The parties all acknowledge that AG's and Expert's fees are in no way contingent on the
nature of our findings, presentation of these findings in testimony, or the outcome of any
proceeding.

July 28, 2022
Page 3 of 4



This letter constitutes the entire agreement between the parties with respect to this matter, and it may only be modified by mutual written agreement.

Please acknowledge Counsel's and Client's agreement with this letter by signing and returning a copy of it to me. Do not hesitate to contact me at any point throughout the engagement with any questions you may have. We look forward to working with you.

Very truly yours,

Managing Principal

Accepted and agreed:

By:

For:

Date:    7/28/2022

Accepted and agreed:

By:

For:    Wachtell, Lipton, Rosen & Katz

Date:    July 29, 2022

July 28, 2022
Page 4 of 4

Accepted and agreed:

By: _____

For:   Wilson Sonsini Goodrich & Rosati, P.C.

Date:   07/30/22
_____

Accepted and agreed:

By: _____

For:   Potter Anderson & Corroon LLP

Date:   7/31/22
_____

Accepted and agreed:

By:   Karen Colangelo _____
26C8BBEDB221475...

For:   Twitter, Inc.

Date:   7/31/2022
_____

**Analysis Group, Inc. is an Equal Opportunity Employer.  It abides by the applicable requirements of 41 CFR 60-300.5(a) and 60-741.5(a) which prohibit discrimination against qualified individuals on the basis of protected status or disability, and require affirmative action to employ and advance in employment qualified protected veterans and individuals with disabilities.**

 **ANALYSIS GROUP**

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

July 27, 2022

Ryan A. Mcleod, Esq.
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019-6150

Brad D. Sorrels, Esq.
Wilson Sonsini Goodrich & Rosati, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

~~Peter J. Walsh, Jr., Esq.~~ Christopher N. Kelly, Esg.
Potter Anderson & Corroon LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Re:     *Twitter Inc. v. Musk, et al.*
        Case No. 2022-0613 (Del. Chancery Ct.)

Dear Counsel:

We are very pleased that Wachtell, Lipton, Rosen & Katz, Wilson Sonsini Goodrich &
Rosati, P.C., and Potter Anderson & Corroon LLP (collectively, "Counsel") have decided
to engage Analysis Group, Inc. ("AG") and ████████████ ("Expert") on behalf of its
client, Twitter Inc. ("Client") in the above-referenced matter, and we look forward to
working with you.  The purpose of this letter is to explain the responsibilities of AG,
Expert, Counsel, and Client and to confirm and set forth the terms of the engagement.

AG's work will consist of supporting Expert in tasks associated with providing
consulting assistance to Counsel and, if requested by Counsel, with his development of
an expert report in this matter on relevant issues for Client.  Such work will be performed
at the direction of Expert and in consultation with Counsel.  In addition, AG may provide
economic consulting assistance to Counsel at your direction.

████████████████████████████████████████████

AG's and Expert's work will be performed on a time and materials basis.  Expert's
billing rate is $███ per hour. The 2021 hourly rates for the AG staff who we anticipate
will work on this matter range from approximately $███ to $███ per hour.  AG's rates are
typically revised firm-wide on a calendar-year basis. ████████████████

July 27, 2022
Page 2 of 4

AG will submit monthly invoices, payable upon receipt, which will show our professional services charges and will provide details concerning the nature of the work performed, by whom and the time incurred. The invoices will show, separately, our expense charges for such items as travel, communications, purchase of data, report production and other similar costs. Total expenses are typically about five to ten percent of the invoice amount. Any invoice that remains unpaid more than forty-five days after receipt will, at our option, accrue interest at the rate of one percent per month. AG and Expert, without liability, may withhold delivery of services and may suspend performance of their obligations pending payment of all charges that are due and unpaid more than sixty days after receipt. Counsel and Client acknowledge that all invoices must be current at the time of report issuance, deposition testimony and trial testimony. Twitter, Inc. will be responsible for all costs of collection (including attorneys' fees) as may be allowed by law.

Counsel shall use its best efforts to have AG's bills paid promptly by Client. All of the parties agree, however, that the responsibility for paying AG's bills will rest with Client.



This agreement is deemed to be made under and shall be interpreted in accordance with the laws of the Commonwealth of Massachusetts, excluding its conflict of laws provisions.

The parties all acknowledge that AG's and Expert's fees are in no way contingent on the nature of our findings, presentation of these findings in testimony, or the outcome of any proceeding.

July 27, 2022
Page 3 of 4

███████████████████████████████████████████████████

███████████████████████████████████████████████████

This letter constitutes the entire agreement between the parties with respect to this matter, and it may only be modified by mutual written agreement.

Please acknowledge Counsel's and Client's agreement with this letter by signing and returning a copy of it to me. Do not hesitate to contact me at any point throughout the engagement with any questions you may have. We look forward to working with you.

Very truly yours,

████████████

Managing Principal

Accepted and agreed:

By: _____

For: ████████████

Date: _____

Accepted and agreed:

By: *[signature]*

For: Wachtell, Lipton, Rosen & Katz

Date: July 28, 2022

July 27, 2022
Page 4 of 4

Accepted and agreed:

By: _____

For:   Wilson Sonsini Goodrich & Rosati, P.C.

Date:   7/28/22

Accepted and agreed:

By: _____

For:   Potter Anderson & Corroon LLP

Date:   7/29/22

Accepted and agreed:

By: _____

For:   Twitter, Inc.

Date:   7/29/2022

**Analysis Group, Inc. is an Equal Opportunity Employer.  It abides by the applicable requirements of 41 CFR 60-300.5(a) and 60-741.5(a) which prohibit discrimination against qualified individuals on the basis of protected status or disability, and require affirmative action to employ and advance in employment qualified protected veterans and individuals with disabilities.**

July 27, 2022
Page 3 of 4



This letter constitutes the entire agreement between the parties with respect to this matter, and it may only be modified by mutual written agreement.

Please acknowledge Counsel's and Client's agreement with this letter by signing and returning a copy of it to me. Do not hesitate to contact me at any point throughout the engagement with any questions you may have. We look forward to working with you.

Very truly yours,



Managing Principal

Accepted and agreed:

By:

For:

Date: ___7/27/22___

Accepted and agreed:

By: _____

For: Wachtell, Lipton, Rosen & Katz

Date: _____

 **ANALYSIS GROUP**

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

July 27, 2022

Ryan A. Mcleod, Esq.
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019-6150

Brad D. Sorrels, Esq.
Wilson Sonsini Goodrich & Rosati, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

~~Peter J. Walsh, Jr., Esq.~~ Christopher N. Kelly, Esq.
Potter Anderson & Corroon LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Re:   *Twitter Inc. v. Musk, et al.*
      Case No. 2022-0613 (Del. Chancery Ct.)

Dear Counsel:

We are very pleased that Wachtell, Lipton, Rosen & Katz, Wilson Sonsini Goodrich &
Rosati, P.C., and Potter Anderson & Corroon LLP (collectively, "Counsel") have decided
to engage Analysis Group, Inc. ("AG") and ▮▮▮▮ ▮▮▮▮ ("Expert") on behalf of its
client, Twitter Inc. ("Client") in the above-referenced matter, and we look forward to
working with you.  The purpose of this letter is to explain the responsibilities of AG,
Expert, Counsel, and Client and to confirm and set forth the terms of the engagement.

AG's work will consist of supporting Expert in tasks associated with providing
consulting assistance to Counsel and, if requested by Counsel, with his development of
an expert report in this matter on relevant issues for Client.  Such work will be performed
at the direction of Expert and in consultation with Counsel.  In addition, AG may provide
economic consulting assistance to Counsel at your direction.

███████████████████████████████████████████

AG's and Expert's work will be performed on a time and materials basis.  Expert's
billing rate is $▮▮▮ per hour. The 2021 hourly rates for the AG staff who we anticipate
will work on this matter range from approximately $▮▮ to $▮▮ per hour.  AG's rates are
typically revised firm-wide on a calendar-year basis. ████████████████

July 27, 2022
Page 2 of 4

AG will submit monthly invoices, payable upon receipt, which will show our professional services charges and will provide details concerning the nature of the work performed, by whom and the time incurred. The invoices will show, separately, our expense charges for such items as travel, communications, purchase of data, report production and other similar costs. Total expenses are typically about five to ten percent of the invoice amount. Any invoice that remains unpaid more than forty-five days after receipt will, at our option, accrue interest at the rate of one percent per month. AG and Expert, without liability, may withhold delivery of services and may suspend performance of their obligations pending payment of all charges that are due and unpaid more than sixty days after receipt. Counsel and Client acknowledge that all invoices must be current at the time of report issuance, deposition testimony and trial testimony. Twitter, Inc. will be responsible for all costs of collection (including attorneys' fees) as may be allowed by law.

Counsel shall use its best efforts to have AG's bills paid promptly by Client. All of the parties agree, however, that the responsibility for paying AG's bills will rest with Client.



This agreement is deemed to be made under and shall be interpreted in accordance with the laws of the Commonwealth of Massachusetts, excluding its conflict of laws provisions.

The parties all acknowledge that AG's and Expert's fees are in no way contingent on the nature of our findings, presentation of these findings in testimony, or the outcome of any proceeding.

July 27, 2022
Page 3 of 4

This letter constitutes the entire agreement between the parties with respect to this matter, and it may only be modified by mutual written agreement.

Please acknowledge Counsel's and Client's agreement with this letter by signing and returning a copy of it to me.  Do not hesitate to contact me at any point throughout the engagement with any questions you may have.  We look forward to working with you.

Very truly yours,



Managing Principal

Accepted and agreed:

By:      _____

For:     ▮▮▮▮▮▮▮▮

Date:    _____

Accepted and agreed:

By:      _____

For:     Wachtell, Lipton, Rosen & Katz

Date:    July 28, 2022

July 27, 2022
Page 4 of 4

Accepted and agreed:

By: _____

For:    Wilson Sonsini Goodrich & Rosati, P.C.

Date:    7/28/22
_____


Accepted and agreed:

By: _____

For:    Potter Anderson & Corroon LLP

Date:    7/29/22
_____


Accepted and agreed:

By:    Karen Colangelo
_____
    D807954B0861466...

For:    Twitter, Inc.

Date:    7/29/2022
_____


**Analysis Group, Inc. is an Equal Opportunity Employer.  It abides by the applicable requirements of 41 CFR 60-300.5(a) and 60-741.5(a) which prohibit discrimination against qualified individuals on the basis of protected status or disability, and require affirmative action to employ and advance in employment qualified protected veterans and individuals with disabilities.**

July 27, 2022
Page 3 of 4



This letter constitutes the entire agreement between the parties with respect to this matter, and it may only be modified by mutual written agreement.

Please acknowledge Counsel's and Client's agreement with this letter by signing and returning a copy of it to me.  Do not hesitate to contact me at any point throughout the engagement with any questions you may have.  We look forward to working with you.

Very truly yours,



Managing Principal

Accepted and agreed:

By:

For:

Date:

Accepted and agreed:

By:  _____

For:   Wachtell, Lipton, Rosen & Katz

Date:  _____

# EXHIBIT B

 **ANALYSIS GROUP**

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

**Submitted to legal tracker 11/4 k. fishwick**

**Effective 01/01/2022 - Please refer to new remittance information on last page.**

November 4, 2022

Twitter Inc.
1355 Market Street
Suite 900
San Francisco, CA 94103

|  |  |
|---|---|
| AG Case No.: | Twitter Inc. v. Musk, et al. |
| Invoice No.: | 1038344 |
| Taxpayer ID: | 04-2727260 |

**Re**      **Twitter Inc. v. Musk, et al.**

For professional services rendered and expenses incurred in connection with the above referenced case for the period ending October 31, 2022, including:

- Reimbursement of the invoices submitted to Analysis Group by ████████████ ███████████████████████████████ for professional services rendered in connection with the above referenced case for the period ending October 31, 2022;
- Review of documents, data and other information received from counsel;
- Assist with deposition preparation;
- Research and summary of relevant literature;
- Preparation of summary analyses of relevant materials and data;
- Assistance with analyses for expert reports;
- Assistance to experts with their draft reports and information requests; and
- Discussions with counsel and experts.

Current Billing:

| | | |
|---|---|---|
| Professional Hours | | 3,830.08 |
| AG Professional Services | $ | 1,923,510.00 |
| Expert Services | | 210,503.00 |
| Total Expenses | $ | 52,863.47 |
| **Total Due and Payable - Current Billing** | **$** | **2,186,876.47** |

cc:     Ryan A. McLeod, Esq. (RAMcLeod@wlrk.com)

Page 2

Twitter Inc. v. Musk, et al.

For the period ending October 31, 2022

Invoice 1038344

## Affiliates and Consultants

| Professional | Title | Hours | Rate | P.S. Incurred |
|---|---|---|---|---|
| | Consultant | $ | $ | 95,775.00 |
| | Academic Affiliate | | | 45,825.00 |
| | Academic Affiliate | | | 24,375.00 |
| | Consultant | | | 44,528.00 |
| **Total Affiliates and Consultants** | | | $ | **210,503.00** |

## Professional Hours

| Professional | Title | Hours | Rate | P.S. Incurred |
|---|---|---|---|---|
| | Managing Principal | $ | $ | 111,637.50 |
| | Managing Principal | | | 29,737.50 |
| | Managing Principal | | | 102,300.00 |
| | Managing Principal | | | 141,000.00 |
| | Principal | | | 125,175.00 |
| | Managing Principal | | | 71,632.00 |
| | Vice President | | | 5,032.00 |
| | Vice President | | | 62,377.00 |
| | Vice President | | | 68,809.00 |
| | Vice President | | | 33,275.00 |
| | Vice President | | | 71,148.00 |
| | Vice President | | | 49,268.00 |
| | Vice President | | | 27,685.00 |
| | Director - Data Science | | | 21,780.00 |
| | Manager | | | 9,588.00 |
| | Manager | | | 3,366.00 |
| | Manager | | | 22,389.00 |
| | Manager | | | 4,182.00 |
| | Manager | | | 66,650.00 |
| | Manager | | | 29,150.00 |
| | Manager | | | 35,750.00 |
| | Manager | | | 48,800.00 |
| | Associate | | | 13,200.00 |
| | Associate | | | 36,519.00 |
| | Associate | | | 24,910.00 |
| | Associate | | | 21,996.00 |
| | Associate | | | 16,873.00 |
| | Associate | | | 6,486.00 |

Page 3

<u>Twitter Inc. v. Musk, et al.</u>

For the period ending October 31, 2022

Invoice 1038344



| | | |
|---|---|---:|
| Associate | | 34,169.00 |
| Associate | | 6,815.00 |
| Associate | | 43,146.00 |
| Associate | | 4,230.00 |
| Associate | | 16,497.00 |
| Associate | | 28,927.50 |
| Associate | | 25,925.00 |
| Associate | | 4,420.00 |
| Associate | | 17,425.00 |
| Associate | | 43,987.50 |
| Associate | | 14,025.00 |
| Data Scientist | | 9,432.50 |
| Senior Analyst | | 3,465.00 |
| Senior Analyst | | 44,082.50 |
| Research Associate | | 2,888.00 |
| Data Scientist | | 51,375.00 |
| Senior Analyst | | 19,087.50 |
| Senior Analyst | | 4,987.50 |
| Senior Analyst | | 17,775.00 |
| Senior Analyst | | 32,287.50 |
| Senior Analyst | | 23,962.50 |
| Analyst | | 7,980.00 |
| Analyst | | 32,795.00 |
| Analyst | | 5,495.00 |
| Analyst | | 40,215.00 |
| Analyst | | 35,455.00 |
| Analyst | | 6,580.00 |
| Analyst | | 18,900.00 |
| Analyst | | 6,090.00 |
| Analyst | | 21,700.00 |
| Analyst | | 4,200.00 |
| Analyst | | 34,475.00 |
| **Total Professional Hours** | $ | **1,923,510.00** |

Page 4

<u>Twitter Inc. v. Musk, et al.</u>

For the period ending October 31, 2022

Invoice 1038344

**Expense Summary**

| <u>Expense Category</u> | | <u>Amount</u> |
|---|---|---|
| Articles, Publications, books | $ | 443.74 |
| Data Purchase | | 2,431.73 |
| ████ Consulting Fee paid at the request of Twitter | | <u>49,988.00</u> |
| **Total Expenses** | $ | <u>**52,863.47**</u> |

Note: Expenses, which include such items as travel, photocopy, telephone and computer services, may be billed one to two months after being incurred.